## DWIGHT v. GUANAJUATO CONSOL. MIN. & MILL. CO.

(Supreme Court, Appellate Division, First Department.   January 20, 1911.)

1. GUARANTY (§ 37*)—CONSTRUCTION AND OPERATION—SCOPE AND EXTENT—
   LIABILITY.

   A corporation issued debenture bonds, among the conditions of the
   bonds, and made part of them, being a provision that, should a mortgage
   be thereafter executed on its property as security for any future issue
   of their bonds the holders of its debenture bonds had the option to de-
   clare the principal of their bonds forthwith due and thereupon to receive
   payment of their bonds at a stated price with interest.  The bonds also
   carried defendant's written guaranty that, for value received, it guaran-
   teed the punctual payment of the principal and interest of the bonds at
   the time and in the manner therein specified.  On December, 1908, it ex-
   ecuted a mortgage.  *Held,* that the obligation of the guarantor was not
   deferred until the maturity of the bonds, but was an obligation to pay
   the bonds at such time after the issuance of a mortgage as a holder
   should elect to declare his bonds payable.

   [Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 46;  Dec. Dig.
   § 37.*]

2. BONDS (§ 117*)—MATURITY—OPTION TO HOLDER—EXERCISE—SUFFICIENCY.

   Any informality, in the exercise by a holder of bonds of his option to
   declare the principal due on the happening of a certain event, in elect-
   ing to so declare by a letter signed by the attorney for the holder, was
   immaterial, where the obligor accepted the notice without demur and
   plainly intimated a purpose to pay off the bonds, especially where it ap-
   pears that the attorney was in fact acting in behalf of the holder.

   [Ed. Note.—For other cases, see Bonds, Dec. Dig. § 117.*]

Appeal from Trial Term, New York County.

Action by Theodore Dwight against the Guanajuato Consolidated
Mining & Milling Company.  From a judgment dismissing the com-
plaint, the plaintiff appeals.  Judgment reversed, and new trial or-
dered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

Samuel H. Richardson, for appellant.
Donald McLean, for respondent.

SCOTT, J.   Plaintiff appeals from a judgment entered upon the
dismissal of his complaint at Trial Term.

The defendant was sued as guarantor of the payment of principal
and interest of certain debenture bonds of the Carmen-Guanajuato
Gold Mining Company, a West Virginia corporation, owner of a mine
in Mexico.   The said debenture bonds were issued by the Carmen-
Guanajuato Gold Mining Company in 1903, and by their terms were
payable in 1923, with interest at 7 per cent. payable semiannually in
January and July.  The bonds as issued were payable to bearer and
had annexed coupons containing a promise to pay the semiannual in-
terest at the company's agency in New York City, on each of the in-
terest days during the life of the bond.

Indorsed upon the bond and made a part of it are a series of condi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tions, numbered 1 to 10, providing, among other things, in subdivisions 3 and 4, for the redemption of the bonds by the company in whole or in part, at any time, at the company's discretion, after January, 1904, and in case of such redemption reserving to the bondholder certain rights for the conversion of his debenture bond into stock of the company. Subdivision 5 covered the case of the company thereafter executing a mortgage on the property of the company as security for any future issue of bonds; and in that case it was provided that:

"The holders of the debenture bonds herein specified shall be given the option: '(a) To exchange their debenture bonds for an equal amount at par of the said bonds or debentures hereafter issued, or convert their said debenture bonds into the stock of the company on the basis of 110 for debenture bonds and par for stock; or (b) to declare the principal of their debenture bonds forthwith due and prior to or simultaneously with such future issue of bonds; or debenture bonds to receive payment of their debenture bonds at the price of 110 with accrued interest to the date of said payment, or convert said debenture bonds into the stock of the company on the basis of 110 for bonds and par for stock.' "

Subdivision 6 provides that no such mortgage shall be executed "without the consent of the holders of record of 70 per centum of the stock of the company then outstanding."

Subdivision 7 provides for the nonpayment of interest coupons, in such case making the principal of the bond to become due and payable as therein provided.

Upon the bonds sued upon by the plaintiff in this action was the following guaranty by this defendant company:

"For value received the Guanajuato Consolidated Mining & Milling Company hereby guarantees the punctual payment of the principal (at par) and interest upon the within bond at the time and in the manner therein specified without recourse, however, to any director, officer, agent or stockholder of said Guanajuato Consolidated Mining & Milling Company for any purpose or upon any ground."

This action was founded upon clause "b" of section 5 above mentioned. The plaintiff's proof showed the issue of the bonds and the authenticity of the defendant's guaranty as indorsed thereon. The issuing of a mortgage on December 1, 1908, was admitted and affirmatively set up by the answer of the defendant.

The nonsuit at Trial Term proceeded upon the theory, urgently contended for by the respondent, that defendant's guaranty of payment applied only to payment of the bonds on their due date in 1923, and was not applicable to an accelerated due date in consequence of the execution of the mortgage and the election of the bondholder to declare his bonds due and payable. We do not consider that this is the fair and reasonable construction of the guaranty. By its terms defendant guaranteed payment of the bonds "at the time and in the manner therein specified." Turning to the bonds, we find that they are made payable, in any event, on January 1, 1923. To each bond is appended a series of conditions which are, by express terms, made a part of the bond, and among which are to be found those already quoted, by which the right is accorded to the bondholder, in case of the execution of a mortgage upon the property, "to declare the prin-

·cipal of their debenture bonds forthwith due  *  *  *  and to receive payment of their debenture bonds." So soon therefore as the mortgage was executed, and the plaintiff elected to take payment for his bonds, the amount thereof became payable "at the time and in the manner therein specified," and the guaranty became effective. Any ·other construction would be manifestly unreasonable. Although the debenture bonds were not secured by any specific lien upon the property of the obligor, their value depended upon the value of the property of the obligor over and above any specific liens which might be placed thereon. Consequently the execution of a mortgage upon the property, which would create a specific lien thereon, would to an extent impair the security and lessen the value of the debenture bonds. It was in recognition of this consequence, and as an inducement to investors to purchase the debenture bonds, that conditions were attached to them by which their holders became entitled upon the execution of any mortgage upon the property to exchange their bonds for bonds to be secured by the mortgage, to exchange such debenture bonds for stock, or to demand and receive payment of the bonds held by them. The construction given to the guaranty at Trial Term would compel a bondholder, who elected to call his bonds due, to wait for a dozen years or more to enforce payment of what is due him, holding meanwhile an impaired security. It is suggested that plaintiff did not sufficiently exercise his option to declare his bonds due and payable. This objection is untenable. The election was evidenced by a letter signed, not by plaintiff, but by his attorney. This was perhaps informal, but it was accepted without demur by the obligor, who in plain terms intimated its purpose to pay off plaintiff's bonds out of the proceeds of the mortgage and thus obviated the necessity for any further or more formal notice of election. Furthermore it is clearly shown that the attorney did in fact represent plaintiff and acted in his behalf.

The judgment appealed from must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.